UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLYS XAVIER ARENAS VILLAMIZAR, (A244-646-012),

Petitioner,

v.

WARDEN, et. al.,

Respondents.

No. 1:26-cv-04361-DC-CKD

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of Venezuela, approached the U.S.-Mexico border on or about July 30, 2024, pursuant to a scheduled appointment via the CBP One App. ECF No. 5-1 at 2. Upon encountering Petitioner in this manner, immigration officials paroled Petitioner into the United States and placed him in removal proceedings. Id. On May 24, 2026, Petitioner was arrested and charged under Utah Codes 76-5-114, domestic violence in presence of a child, and 23A-7-210, damage or destruction of property. Id. ICE detained Petitioner on May 26, 2026. Id. Petitioner is currently detained at California City Immigration Processing Center. ECF No. 1 at 1. The criminal charges and removal proceedings remain pending.

On June 8, 2026, Petitioner filed a petition for writ of habeas corpus, alleging that continued detention without an individualized custody determination violates due process. ECF No. 1. He seeks a bond hearing or release under reasonable conditions of supervision. Id. at 2. Respondents claim that noncitizens, like Petitioner, who have been present unlawfully in the United States are applicants for admission and therefore subject to mandatory detention under 8 U.S.C. § 125(b)(2). ECF No. 5. They acknowledge that courts in this district have rejected Respondents' position in numerous similar cases and note a circuit split on the issue. Id. As to relief, Respondents argue that where, as here, Petitioner was re-detained based on pending criminal charges, the proper remedy is a post-deprivation bond hearing rather than release. Id.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). The Due Process Clause "protects individuals against two types of

government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall

be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3. Such parole, however, "shall not be regarded as an admission of the [non-citizen]." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the [non-citizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Id.

**III. Analysis**

As Respondents acknowledge, courts in this district have consistently rejected Respondents' position that noncitizens who are present in the United States unlawfully are subject to mandatory detention under 8 U.S.C. 1226(b)(2). Where noncitizens have been paroled or released from detention, this court has applied the Mathews test to find that due process requires that such noncitizens be afforded a bond hearing prior to any re-detention. See, e.g., Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026); Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, Doc. No. 8 (E.D. Cal. Feb. 5, 2026). The undersigned finds no meaningful distinction between the above-referenced cases and the instant case in that regard.

As to relief, this court has previously held that "[W]here the government adequately alleges that a changed circumstance warrants a petitioner's immigration detention, the proper remedy for a failure to provide a bond hearing is a post-deprivation bond hearing, not immediate release." Chateauneuf v. Chestnut, No. 1:26-cv-01073-DC-JDP, 2026 WL 523695, at *4 (E.D. Cal. Feb. 25, 2026), citing Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627, at *3. The instant case is analogous to Calvillo in that Petitioners in both matters were re-detained

after a "changed circumstance arguably indicating that Petitioner is a threat to public safety." Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627, at *3. Here, that changed circumstance is Petitioner's 2026 criminal arrest. The undersigned agrees with the conclusion in Calvillo that Respondent bears the burden to show, by clear and convincing evidence, that the alleged changed circumstance demonstrates that Petitioner is either a flight risk or a threat to public safety. Id. Cf. Chateauneuf v. Chestnut, No. 1:26-cv-01073-DC-JDP, 2026 WL 523695 (finding that where the petitioner had *not* previously been detained, the *petitioner* bears the burden because ICE had not made an initial determination regarding flight risk or public safety).

**IV. Recommendations**

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner Charlys Xavier Arenas Villamizar's petition for writ of habeas corpus be GRANTED as follows:

1. Respondents be ORDERED to provide Petitioner a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of the date of entry of the order;
2. At the bond hearing, Respondents shall bear the burden of demonstrating, by clear and convincing evidence, that the alleged changed circumstances establish that Petitioner is either a flight risk or threat to public safety, such that detention is justified;
3. Within three (3) days of the bond hearing, Respondents shall file a status report in this case confirming that Petitioner has been provided the bond hearing;
4. If Respondents fail to provide Petitioner a bond hearing within seven (7) days, Petitioner shall be immediately released from Respondents' custody on the same terms as his initial grant of parole, and the Clerk be directed to serve the relevant detention facility with a copy of any order granting release;
5. If the government seeks to re-detain Petitioner following any release, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to § 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered; and
6. The order not address the circumstances in which Respondents may detain Petitioner

in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 17, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 Aren4361.imm.frs